# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

RHONDA RENEE LEMONS,                )
                                    )
            Plaintiff,              )
                                    )
v.                                  )   Case No. CIV-08-002-JHP
                                    )
MICHAEL J. ASTRUE,                  )
Commissioner of Social              )
Security Administration,            )
                                    )
            Defendant.              )

## REPORT AND RECOMMENDATION

Plaintiff Rhonda Renee Lemons (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. See, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. See generally, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on October 20, 1970 and was 36 years old at the time of the ALJ's decision. Claimant completed her education through the twelfth grade. Claimant has worked in the past as a cashier and a material handler. Claimant alleges an inability to work beginning February 16, 2005 due to a work-related back injury.

**Procedural History**

On March 28, 2005, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, et seq.) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On March 29, 2007, a hearing was held

before ALJ Kim Parish in Ardmore, Oklahoma. By decision dated May 25, 2007, the ALJ found that Claimant was not disabled. On November 1, 2007, the Appeals Council declined to review the ALJ's decision. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made her decision at step five of the sequential evaluation. She determined that while certain of Claimant's medical conditions were severe, Claimant did not meet a listing, did not retain the residual functional capacity to perform her past relevant work, but found Claimant did retain the residual functional capacity to perform a significant range of sedentary work.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in failing to properly evaluate the opinion of her treating physician.

**Evaluation of Claimant's Treating Physician's Opinion**

Claimant asserts the ALJ failed to properly consider the opinion of her treating physician, Dr. Steven Crawford. The medical evidence indicates Claimant has a history of coronary artery disease. (Tr. 116). Claimant has also been treated for other ailments. (Tr. 113, 116-119, 160-196, 219-248). Claimant was treated by Dr. Steven Crawford on March 7, 2004 for back and

4

hip pain that radiated into both legs. (Tr. 122). Dr. Crawford diagnosed Claimant with radiculopathy by symptoms but he was unclear whether it was related to back stress or fat accumulation. Id.

On March 16, 2005, Claimant reported to the emergency room at the Marshall County Medical Center, complaining of mid to low back pain for the preceding two months. (Tr. 110). Claimant began seeing a chiropractor thereafter, presenting for treatment some 32 times over the next five month period. (Tr. 134-144).

On April 26, 2005, Claimant underwent a lumbar MRI. Dr. Derek Howard found Claimant had an acute tear of the annulus fibrosis of the L5-S1 disc with mild broad-based posterior disc herniation. The herniation produced 10-15% central spinal stenosis with mild bilateral neural foraminal narrowing. (Tr. 139). Dr. James Chapman found the MRI showed degenerative disc changes at L5-S1 with a disc annulus tear resulting in mild central bulging but no disc herniation. (Tr. 140).

On May 12, 2005, Claimant saw Dr. Crawford. He found Claimant was not in acute distress. He diagnosed Claimant with hypertension, essential, under good control with history of recurrent chest pain and degenerative disc disease, lumbar. (Tr. 121).

On June 18, 2005, Claimant was evaluated by Dr. Baha Abu-Esheh. She reported a lot of lower back pain without radiation or

5

numbness. She also complained of weakness in her right leg with difficulty bending and walking too long. She sits with a pillow supporting her back and has difficulty doing housework, taking a bath, or shaving her legs. (Tr. 124). Dr. Abu-Esheh found Claimant was tender with limited range of motion in all plane associated with pain in the lumbar-sacral spine region. He determined Claimant had positive straight leg raising reflexes bilaterally in both the sitting and supine positions with ankle reflex absent on the left. (Tr. 126). Dr. Abu-Esheh noted Claimant's gait was safe and stable with a slow speed and limping on the right side. Id.

On October 28, 2005, Claimant was examined by Dr. Brent N. Hisey, a neurological surgeon. Dr. Hisey read Claimant's MRI and found she had an annular tear and central disc protrusion at L5-S1. (Tr. 151). He diagnosed Claimant with L5-S1 disc syndrome and perhaps a cervical disc injury. He prescribed physical therapy three times per week for her cervical and lumbar regions and placed her on a Medrol Dosepak. He indicated Claimant was temporarily totally disabled. (Tr. 152).

On January 17, 2006, Claimant underwent a CT of the lumbar spine and a diagnostic provocative lumbar discogram at L3-4, L4-5, and L5-S1. (Tr. 148-150). The L5-S1 disc was a positive concordant degenerative disc with reproduction of Claimant's familiar low back pain with continuing pressurization pain that

radiated to the right leg in a familiar fashion. The nucleogram showed a large posterior annular fissure bulge. (Tr. 150).

On February 7, 2006, Claimant again saw Dr. Hisey. The results of the discogram was considered by Dr. Hisey to be a good match of her pain syndrome. However, after a discussion with Claimant's cardiologist, Dr. Hisey did not recommend surgery. Instead, Dr. Hisey recommended Claimant to Dr. Al Moorad for pain management. (Tr. 146).

On July 13, 2006, Claimant was attended by Dr. Crawford for blood pressure, depression, and pain medication. Claimant continued to complain of her lumbar disc disease. Dr. Crawford diagnosed Claimant with hypertension, essential, only under fair control but could be related to the pain she is in; headaches, recurrent; and lumbar disc disease. (Tr. 158).

On March 26, 2007, Dr. Crawford completed a Medical Assessment of Ability to Do Work Related Activities (Physical) form on Claimant. He found Claimant was restricted to one hour of sitting upright, not reclined in an 8 hour workday, one hour standing in an 8 hour day, and one hour of walking in an 8 hour day. He determined Claimant could not work an 8 hour day regardless of alternating sitting and standing. Her lifting was found to be restricted to under 5 pounds. She could not push and pull arm controls. She could push leg controls with her right foot if less than 5 pounds were involved. She needed to frequently elevate her

7

legs. Dr. Crawford based his findings upon his examination done July 13, 2006. (Tr. 249).

In her decision, the ALJ found Claimant had the residual functional capacity to perform a wide range of sedentary work. (Tr. 19). She found Dr. Crawford's assessment on the form he completed "is not supported by the medical evidence as a whole and is not consistent even with his own treating notes and is not given controlling weight." (Tr. 23). The ALJ found Dr. Crawford had last examined Claimant in May of 2005 and that, essentially, her conditions were being adequately treated. Id.

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The

factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

It does not appear the ALJ gave Dr. Crawford's opinion any weight. The ALJ wholly failed to engage in the required analysis for declining to give a treating physician's opinion controlling weight let alone for failing to provide any weight to the assessment. Moreover, in rejecting Dr. Crawford's evaluation, the ALJ appears to have relied upon one treatment note while failing to

recognize Dr. Crawford treated Claimant in July of 2006 and failing to recognize the other testing by physicians other than Dr. Crawford which provides tacit support for his assessment of Claimant's condition. As a result, the ALJ's decision should be reversed and the matter remanded for further explanation and evaluation.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given ten (10) days from the date of the service of these Findings and Recommendations to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Findings and Recommendations within ten (10) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 21st day of January, 2009.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE